WARD PARKWAY SHOPS, INC.,
Plaintiff-Respondent,

v.

C. S. W. CONSULTANTS, INC.,
Defendant,

and

Steven T. Schanzer, Defendant-Appellant.

No. 27494.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 12, 1976.

Slagle & Bernard, John J. Williams, III, Kansas City, for defendant-appellant.

Terence M. O'Brien, Kansas City, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an action for Declaratory Judgment wherein the Ward Parkway Shops, Inc. (hereafter respondent), the lessor of business property to the defendant C. S. W. Consultants, Inc., a Missouri corporation (hereafter Consultants), lessee, seeks a declaration of rights, a money judgment for unpaid rent, and other equitable relief

against Consultants and one Steven T. Schanzer, appellant (hereafter Schanzer), the sole stockholder of Consultants and its president. The evidence is undisputed as to the factual background giving rise to this action.

On the second day of February, 1968, the respondent, as lessor, entered into a written Office Lease with Consultants, as lessee, for space in a shopping center known as Ward Parkway Shopping Center, in Kansas City, Missouri for a term of five (5) years beginning February 15, 1968 and ending February 15, 1973, for an annual rental of $4,724.40, payable $393.70 per month, due the 1st day of each month during the term of the lease. The lessee was further obligated to pay all charges for electricity used in connection with the premises. This lease was executed by Schanzer as president, and one Covington, as vice president, of Consultants.

Consultants took possession of the leased premises and paid the rental called for under the lease through the month of September, 1968, but defaulted on the rental due on October 1, 1968 and thereafter. Consultants vacated and abandoned the premises sometime in December, 1968. At that time, it owed the rent for October, November and December, 1968, and electric charges in the amount of $131.01. The record discloses that respondent, through its attorney, made demand for the rental due and advised Consultants' attorney by letter that it would be held to the terms of the lease or suit would be filed thereon. An exchange of correspondence and telephone conversations ensued between counsel the latter part of December, 1968, and the first week of January, 1969, during which time counsel for respondent, upon request, furnished Consultants' counsel a copy of the lease and was told in a letter dated January 7, 1969, from Consultants' counsel, that his "client" was out of town but was expected back "the middle of next week", at which time a conference would be held, and "I will be in contact with you in reference hereto shortly." The next communication received by respondent's counsel was a letter from Con-

sultants' counsel dated January 9, 1969, enclosing a Notice of Filing of Articles of Dissolution by Consultants with the Secretary of State of Missouri on December 31, 1968. Such Articles of Dissolution were introduced in evidence below and disclose that they were executed on behalf of Consultants by Schanzer, as president, and notarized by counsel for Consultants on December 9, 1968. The Articles further disclose that Schanzer was "the only shareholder" of Consultants. Under date of January 9, 1969, Articles of Liquidation were executed and sworn to by Schanzer as president of Consultants, and notarized by Consultants' counsel. It is interesting to note that this date was the same as the date counsel for Consultants had mailed a copy of the Notice of Filing Articles of Dissolution to respondent's counsel and two days subsequent to the letter of January 7, 1969.

The sworn Articles of Liquidation of January 9, 1969 included, as required by law, Section 351.475 RSMo 1969, the following affirmations by Schanzer:

"Article 3. All debts, obligations and liabilities of the corporation have been paid and discharged, or that adequate provision has been made therefor.

Article 4. All the remaining property and assets of the corporation have been distributed among its shareholders, in accordance with their respective rights and interests."

Pursuant to such Articles of Liquidation, the Secretary of State of Missouri did on January 10, 1969, issue a Certificate of Dissolution of Consultants.

Nothing has been paid to respondent by Consultants or Schanzer upon the rental as provided under the lease since September of 1968. However, under date of January 22, 1969, counsel for respondent advised Consultants and Schanzer, by letter, that the lessor-respondent had elected to relet the premises under paragraph 5 of the lease upon the conditions as set forth therein, namely, that the lessee would be given credit against the total rentals due under the lease for the net returns from such reletting.

Mr. Roger Hunt, the manager for respondent, testified that as a result of such procedure the gross amount due his principal under the lease was $20,800.26 (including $131.01 in electric bills) less $9,048.47 proceeds from reletting over the term of the lease, leaving a balance due of $11,751.79.

As part of the plaintiff's (respondent's) case, interrogatories propounded to Schanzer and his answers thereto were offered and received as evidence. In summary, these answers disclosed: That Schanzer owned all of the capital stock of Consultants on December 30, 1968; that he had no information as to the personal property or assets owned by Consultants or in which it had an interest on June 1, 1968, August 1, 1968, and December 30, 1968, or of any books, papers or other documents which would reflect such information either extant or previously destroyed, or otherwise disposed of, or the names and identification or nature of service performed by any accountant for Consultants; and, that plaintiff (respondent) had a better source of information than he as to the date on which Consultants occupied the leased premises or the date it vacated the premises. These answers were sworn to by Schanzer before his counsel acting as Notary Public.

Also as part of plaintiff's (respondent's) case in the court below, it introduced its Request for Admissions directed to Schanzer covering the basic facts, including the documentary evidence above described. In response to all of these, Schanzer filed his objection based upon the reason that:

> "an answer to each and every request therein might incriminate defendant Schanzer."

This objection was signed by counsel and not be Schanzer. The Request and Objections thereto were received in evidence in the trial below. No evidence was offered by either defendant.

At the close of all the evidence, the court below made findings of fact based upon the proof offered by plaintiff as above summarized and entered a judgment against Consultants and Schanzer, jointly and severally, in the amount of $11,751.79, with interest

from date and for costs. Schanzer alone appealed.

Preliminary to a determination of the points raised by Schanzer on this appeal, it should be noted that the scope of review of this court-tried case has been recently defined in *Murphy v. Carron*, 536 S.W.2d 30, 32[2] (Mo.1976). This court reviews the whole record and will sustain the judgment below unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, or unless it erroneously applies the law.

■ One further general consideration requires notice. This is basically a declaratory judgment action seeking determination of rights and status and legal relations of the parties, and a further finding that under the lease and dissolution documents Consultants and Schanzer are liable to respondent for all unpaid rents and electric charges during the term, less credit for the net proceeds received by respondent from reletting the premises. In addition, the respondent sought a money judgment for such amount and for any additional equity relief necessary.

The respondent could properly seek coercive relief in addition to a declaration of rights, status and legal relations. *Hudson v. Jones*, 278 S.W.2d 799, 803–804[6, 7] (Mo. App.1955); *City of Creve Coeur v. Creve Coeur Fire Protection District*, 355 S.W.2d 857, 859[6, 7] (Mo.1962). That fact does not, however, destroy the basic character of this action.

Declaratory judgment actions have been defined as *sui generis* neither strictly legal nor equitable, but having an historical affinity in equity and governed by equitable principles. *Gurniak v. Liszewski*, 411 S.W.2d 84, 86[4] (Mo.1967); *Gottlieb v. LaBrunerie*, 514 S.W.2d 27, 31[2] (Mo.App. 1974); *C. S. v. J. W.*, 514 S.W.2d 848, 854[9] (Mo.App.1974).

Apparent from the record before this court there is no room for valid dispute as to any of the operative facts decisive of this appeal. Respondent's theory below, implicit in the trial court's findings and judg-

ment, is that upon dissolution of Consultants a trust relationship was created between Schanzer and respondent, sometimes referred to in the law as a constructive trust of a trust *ex malificio*.

Schanzer's first point on this appeal is that the court erred in granting a judgment against him personally, upon a "mere showing" that he was the sole stockholder in Consultants and caused such corporation to be dissolved and liquidated; that his personal liability as a stockholder, officer and director, is limited to such assets of the corporation as were delivered to him as a stockholder in liquidation; and, that the record does not establish that Consultants owned any assets or that any were delivered by or to Schanzer. While under the facts of this case, this position is at once ingenious and bold, it requires a review and application of firmly fixed corporate law concepts.

■ Of course, it is elemental that a corporation is purely a creature of law, a fictitious being created by the sovereign and existing under applicable laws and with specific powers and specific limitations. The granting of a corporate charter by Missouri (as in the case at bar) creates a contract between the state and the corporation directly affected by public interest. When the corporate charter is issued, there is written into it, by operation of law, the constitutional and statutory law of the state. 18 C.J.S. Corporations § 71, pp. 456, 458; 18 Am.Jur.2d, Section 81, p. 622; *Midland Truck Lines, Inc. v. Atwood*, 362 Mo. 397, 241 S.W.2d 903, 905[1] (1951); *Shapiro v. Tropicana Lanes, Inc.*, 371 S.W.2d 237, 241[2] (Mo.1963); *Pacific Intermountain Express v. Best Truck Lines, Inc.*, 518 S.W.2d 469, 472[3] (Mo.App.1974). The public interest which pervades the operation of a corporation, which owes its very existence to the public (sovereign state), has also been recognized in ancient (by Missouri standards) decisional law in *Missouri Lead Mining & Smelting Co. v. Reinhard*, 114 Mo. 218, 21 S.W. 488, 491 (Mo.1893), where the court said:

" * * * It is a favorite doctrine with the courts of equity that the capital stock *and other property of a corporation is to be deemed as between creditors and stockholders, a trust fund for the payment of the debts* ; * * * " (Emphasis supplied)

This same trust philosophy has found expression in many later cases, as in *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 431[5, 6] (Mo.1968). Corporations are, of course, protected from too harsh or onerous application of this principle by the legal remedies of bankruptcy or court-controlled receivership.

But there is another area, involved here, which is afforded them, conditionally, under Missouri law, that of voluntary dissolution and liquidation, the course sought to be accomplished by Consultants. The statutory provisions pertinent here, and written into Consultants' charter by operation of law, provide that a voluntary dissolution may be accomplished by various well-defined procedures. One such method is by means of a written consent signed by all the shareholders and the execution of Articles of Dissolution, verified by either the president or vice president, which must contain specified information. Section 351.460 RSMo 1969. Consultants' Articles of Dissolution were in substantial compliance with this statute. Section 351.470 RSMo 1969, in pertinent part, provides that when the Articles of Dissolution are filed with the Secretary of State and found by him to be in conformity with the statute, the corporation shall cease to carry on its business and enter into a period of winding up or liquidation of such business. As a part of such process, Section 351.470 provides:

"3(2) The corporation shall proceed to collect its assets * * * pay, satisfy and discharge its liabilities and obligations * * * and, after paying or adequately providing for the payment of all its obligations, distribute the remainder of its assets * * * among its shareholders according to their respective rights and interests; * * * "

Further, this statute provides that "its corporate existence shall continue until a certificate of dissolution has been issued by the secretary of state." Section 351.470(2).

Section 351.475 RSMo 1969, provides in part:

> "When all debts, liabilities and obligations of the corporation shall have been paid and discharged, or adequate provision shall have been made therefor, and all the remaining property and assets of the corporation shall have been distributed to the shareholders * * * "

that Articles of Liquidation shall be executed and verified under oath by the president and contain and include the sworn statement of compliance with the above requirements. Upon receipt of such Articles of Liquidation, in conformity with law, the secretary of state issues his Certificate of Dissolution and the corporation thereupon ceases to do business.

As has been noted above, the Articles of Liquidation for Consultants was executed by Schanzer under date of January 9, 1969, containing the above-quoted statements under oath with reference to Consultants' debts and distribution of assets, and pursuant thereto the Certificate of Dissolution was issued under date of January 10, 1969.

■ These Articles of Liquidation, therefore, disclose under oath that Consultants was possessed of assets to pay its creditors (including respondent) or make adequate provision therefor and additional assets to distribute to Schanzer, its sole shareholder. Otherwise, it would not have been eligible for voluntary dissolution under the statutes above referred to.

Although upon this record such facts are properly considered as true, no part of the debt owing respondent has been paid and the assets necessary to do so are presumably in the possession of Schanzer or under his control. He thus becomes, by application of equitable principles, a trustee for the benefit of the respondent under a constructive trust. *Lucas v. Central Missouri Trust Co.*, 350 Mo. 593, 166 S.W.2d 1053, 1056–1057[1] (1942); *Service Life Insurance Company of Fort Worth v. Davis*, 466 S.W.2d 190, 195–196[4] (Mo.App.1971) and cases cited therein.

A much quoted expression of the equitable principles of constructive trust is found in the case of *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919) wherein Cardozo, J., speaking for the court, stated, l.c. 122 N.E. 380–381[4, 5]:

> "[4] * * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * *
>
> [5] * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."

See also: *March v. Gerstenschlager*, 436 S.W.2d 6, 8[2] (Mo.1969).

■ Neither is it necessary to establish actual fraud to uphold a constructive trust. The breach of the fiduciary relationship which Consultants and Schanzer, the sole stockholder and distributee of the assets, held toward the respondent-creditor was a constructive fraud sufficient to support the constructive trust and to prevent the unjust enrichment of Schanzer. *Murphy v. Olds*, 508 S.W.2d 249, 252[5–7] (Mo.App.1974); *Swon v. Huddleston*, 282 S.W.2d 18, 25[9] (Mo.1955).

■ A further valid reason why the position of Schanzer under his first point must be rejected under principles of equity, is that the lack of such proof was due to his evasive answers to interrogatories, his failure to account as trustee, his failure to testify or offer any proof at trial, and his invocation of his constitutional right against self-incrimination. These postures, in addition to his positive statutory affidavit filed with the Secretary of State to accomplish voluntary dissolution of Consultants, raise such strong presumptions and inferences as to impel the findings and judgment in the court below.

What has been said also disposes of Schanzer's second point on this appeal, which was that the court below erred in rendering judgment against him based upon the Articles of Liquidation which "contained untrue statements"; that there was no proof that such untrue statements directly and proximately caused respondent's loss of the rentals and consequent damage, and that all elements of actual fraud were not established. Respondent concedes that the Articles of Liquidation did in fact contain the untrue statement that its debt had been paid and discharged or adequate provision made therefor. Its position is that the failure of Consultants and Schanzer to do so invoked the equitable doctrine of constructive trust, the very basis of its theory of recovery.

Additionally, it is noted that at no time, until the filing of his brief in this court, did Schanzer ever advance this specious argument. This court cannot (and will not) open the floodgates for fraud implicit in this argument by approving resort to the statutory procedures for voluntary dissolution in order to foreclose the rights of corporate creditors by false swearing that all debts have been paid or adequate provision made therefor, and the conversion of corporate assets, impressed with a constructive trust, by distribution to the stockholders, who subsequently fail or refuse to make disclosure of the facts.

The judgment of the court below was based upon substantial evidence and no error of law appears.

The judgment is accordingly affirmed.

All concur.