**William R. DARNEL et al., Appellants,**

v.

**James O. EAST and East Painting, Inc., Appellees.**

**No. 77–1600.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1978.

Decided April 6, 1978.

Michael C. Arnold, Kansas City, Mo., for appellant; Albert J. Yonke, Kansas City, Mo., on the brief.

David M. Harding, Terrell, Van Osdol & Magruder, Kansas City, Mo., for appellee; Robert F. Redmond, III, Kansas City, Mo., on the brief.

Before ROSS and HENLEY, Circuit Judges, and LARSON,* Senior District Judge.

ROSS, Circuit Judge.

The trustees of three fringe benefit funds (the Pension Fund, the Health and Welfare Fund, and the Savings Fund) of Painters District Council No. 3 (the union) appeal from that portion of the judgment of the district court denying their requested relief against James O. East and dismissing on the merits their action against him. They also challenge the amount of damages awarded against East Painting, Inc.

## I.

The basic facts are undisputed.[1] Prior to December 24, 1969, James O. East, doing business as East Painting Company, operated a painting contracting business and employed union members. On July 24, 1969, East, an individual proprietor, signed a stipulation agreeing to abide by, and comply with, any collective bargaining agreement between the union and the Builders Association of Greater Kansas City.[2] Both prior to signing that stipulation and until December of 1969, East made the required contributions to the fringe benefit funds.

On December 24, 1969, East incorporated the business. He continued to operate the corporation, East Painting, Inc., as its president, treasurer and one of its directors. East's wife served as vice-president, secretary and the second director. They were the sole shareholders.

There were no substantial changes in the operation, management or personnel of the business. East testified that the business was incorporated to avoid a union contract provision which would have prohibited him, as an employer, from performing any painting himself. In January of 1970 the corporation started making the required contributions to the funds.

On November 5, 1970,[3] East, as president of East Painting, Inc., signed a labor contract with the union. It was antedated July 14, 1969. That contract was identical to the July 13, 1969 contract between the union and the Builders Association, except for the termination provision. The July 13, 1969 Builders Association contract was to continue in effect until March 31, 1972, and from year to year thereafter "unless abrogated by either party upon expiration date." East Painting, Inc.'s contract provided that the agreement was effective until March 31, 1969,[4] and from year to year thereafter "unless notice is given in writing by either party to the other at least sixty (60) days prior to March 31, 1972, or any subsequent annual anniversary date."

Both the corporation's contract and the Builders Association's contract required the following employer contributions to the benefit funds: to the pension and health and welfare funds (effective January 1, 1970), 20 cents per hour for each hour worked by an employee doing work covered by the agreement or, in the case of an employee compensated at rollage rates, 4 percent of the gross earnings of such employee; to the savings fund, 25 cents per hour for each hour worked by an employee doing work covered by the agreement or, in the case of an employee compensated at rollage rates, 4 percent of the gross earnings of such employee.

* The Honorable EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The trustees challenged, for the first time at oral argument on appeal, the finding regarding the date that James O. East, as president of East Painting, Inc., signed a contract with Painters District Council No. 3 dated July 14, 1969. Because both the finding of the district court and the trustees' brief on appeal indicate that the contract was signed on November 5, 1970, we accept that fact as true.

2. Neither East nor the subsequently formed corporation was ever a member of the Builders Association of Greater Kansas City.

3. *See* note 1, *supra.*

4. We assume that this date is an error since it predates the execution date of the contract. The actual effective date is not material to our disposition of the case.

On July 5, 1973, a subsequent contract between the union and the Builders Association was signed. It provided for an increase in employer contributions to the funds and was effective, retroactively, on April 17, 1973. The corporation never signed an agreement adopting the increased rates.

Neither East nor the corporation made any contributions to the funds in 1972 or 1973. On January 29, 1974, East's attorney served a written notice of termination on the union indicating that the corporation intended to terminate "any agreement that may now be in force" between the parties effective March 31, 1972.[5] On or about March 31, 1974, East Painting, Inc., was dissolved and its assets liquidated.

On November 1, 1973, the trustees filed their complaint against East and the corporation under the Labor Management and Relations Act §§ 301 and 302, 29 U.S.C. §§ 185 and 186, demanding that each defendant be required to perform under the terms of their agreements with the union.

After trial to the court the district judge found that it was admitted that the corporation is liable for having failed to contribute to the three fringe benefit funds from January of 1972 to March of 1973, as required under its contract with the union dated July 14, 1969. He further found that the corporation was not obligated under the subsequent contract between the union and the Builders Association to make contributions in the greater amount provided in that contract for the period following April 17, 1973. He did find the corporation liable for contributions to the funds for the period following April 17, 1973, in the amounts provided in its continuing contract with the union.

The district court found no basis in the record for imposing any liability on East individually since he was not an employer during 1972 and 1973 and he was not a party to the collective bargaining agreements in effect during those years.

Apparently the trustees determined that the judgment against East Painting, Inc., is uncollectible. They present unique arguments to this court in an attempt to establish East's individual liability for the 1972 and 1973 contributions. We reject their theories as presented here.

II.

*The Stipulation.*

■ The district court found that the stipulation signed by East on July 24, 1969, was not effective to bind the corporation to the collective bargaining agreements between the union and the Builders Association, in part because there was no consideration for the stipulation and it was not a binding contract. We agree with the trustees that the district court erred in concluding that the stipulation was invalid for lack of consideration. Collective bargaining agreements are not ordinary contracts and are not governed by the common law concepts which govern private agreements. *Transportation-Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 160–61, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). Participation agreements such as the stipulation signed by East have been enforced without question as to consideration. *See, e. g., Calhoun v. Bernard,* 333 F.2d 739 (9th Cir. 1964); *Construction and General Laborers Union, Local No. 1140 v. Sheesley-Winter Construction Joint Venture,* 421 F.Supp. 137 (D.Neb.1976). Furthermore, the parties never questioned the validity of the stipulation.

■ However, even though there is no question as to the validity of the stipulation, we do not believe it was effective to impose liability against James O. East, individually, for the unpaid contributions in issue here. The parties agree that the July 24, 1969 stipulation bound East, as an individual employer, to the provisions of the July 13, 1969 union-Builders Association contract, and he made the required payments to the benefit funds until the busi-

---

5. Under the contract this retroactive notice was not effective and the notice could only serve to terminate the contract on March 31, 1974.

ness was incorporated.[6] After East Painting, Inc., was formed East was no longer an individual employer and, therefore, not bound by the stipulation.[7]

Some argument might be made that the corporation, as a successor employer, was bound by the stipulation, but we do not reach that issue. The corporation continued East's practice of making the required payments to the benefit funds at least until its contract with the union was signed. As we discuss below, after the contract between the union and the corporation was signed, it alone governed the relationship between the parties.

*The Union-Corporation Contract.*

■ The stipulation bound East to a contract that was identical, except for its termination provision, to the contract subsequently signed by the corporation. If, under any theory, the corporation was bound by the stipulation, its obligation thereunder terminated on the execution of its contract with the union. Even though the contract between the union and the corporation contained no clause indicating that it was the sole embodiment of the agreement between the parties, there is no reason to bind the corporation to two contracts in which only the provisions regarding expiration date differed. Since those differing provisions could not coexist, we must take the union-corporation contract, which was signed subsequent to the stipulation, as indicating the intent of the parties regarding that term.

*Piercing the Veil.*

The district court found no evidence that East Painting, Inc., was incorporated to perpetrate a fraud, to defeat the union's rights under the collective bargaining contract, or for any other illicit purpose which would require the court to disregard the corporate entity. The trustees contend that this finding is clearly erroneous and urge

this court to pierce the corporate veil and find James East personally liable for the unpaid contributions. We agree with the district court that there was no fraud or injustice in the formation of the corporation requiring that the corporate veil be pierced.

■ ■ James East testified that he incorporated the business to avoid a contract provision which would have prohibited him, as an employer, from doing any spray painting himself. The union did not challenge the incorporation when it was effected and James East's employment with the corporation is not in issue now. The trustees would have us believe that because East incorporated his business to avoid a provision that would have prohibited him from doing spray painting, he intended to fraudulently avoid every other provision of the labor agreement. This obviously was not the case. The corporation continued to make payments to the benefit funds until 1972, and, in fact, negotiated its own contract with the union. Under these circumstances we find no reason to pierce the corporate veil to resolve the issue presently before the court.

*The Alter Ego Theory.*

■ The district court rejected the trustees' argument that a predecessor employer (East) is bound by the collective bargaining agreement executed by its successor (East Inc.). The trustees contend that the district court misconceived their theory. They argue that they do not seek to impose liability on East by way of a collective bargaining agreement executed by East Painting, Inc.; but that East remained personally liable under his original obligations in view of the fact that he merely changed the structure and identity of the employing entity and continued the operation of the business unchanged as the "alter ego" of the original contracting entity. However, in the cases cited by the trustees it was the predecessor

---

**6.** Whether East was bound by that stipulation after the corporation was dissolved and he began doing business again as East Painting Company, a sole proprietor, is not an issue before this court.

**7.** James O. East's uncontradicted testimony was that all employees were paid by the corporation and he did not have any employees himself during 1972 and 1973.

employer who incurred a current single obligation or duty and changed business forms to avoid that obligation or duty. *See, e. g., NLRB v. Herman Brothers Pet Supply, Inc.,* 325 F.2d 68 (6th Cir. 1963); *NLRB v. Ozark Hardwood Co.,* 282 F.2d 1 (8th Cir. 1960). As noted above, East individually performed all of his obligations as an employer. He incorporated his business for reasons unrelated to the fringe benefit funds and the corporation continued, for a while, to make payments to the funds. It is the *continuing unmet* obligations of the corporation that are presently in issue. East, *as a predecessor employer,* is not liable for those obligations.

### III.

We, therefore, agree with the district court that only the corporation was obligated to make payments to the three fringe benefit funds during the years in question. Furthermore, the union-corporation contract with its year to year extension provision controlled the corporation's obligations and it was not required to make payments at the increased rate provided in the July 5, 1973 contract between the union and the Builders Association. We affirm this portion of the district court opinion.

We note, however, that defendants' exhibit 22, Consent in Lieu of 1974 Annual Meeting of Board of Directors of East Painting, Inc., dated March 8, 1974, contains the following provision:

> The corporation shall cease doing business on March 31, 1974 and its assets shall be sold and the proceeds therefrom applied toward the payment of corporate debts.

There is no indication in the record that articles of dissolution were delivered to the Missouri secretary of state as required by section 351.470 [8] of the Missouri Revised Statutes, or that a certificate of dissolution was issued pursuant to section 351.480. Furthermore, defendants' exhibit 20, minutes of an October 12, 1973 board of directors meeting, indicates that corporate

property was transferred to James East and his wife "in repayment of certain monies which he and his wife had loaned to the corporation from time to time." There is no further evidence in the record with regard to this transaction.

These two exhibits suggest that it might be appropriate to declare a constructive trust to prevent unjust enrichment of the shareholders. *Cf. Ward Parkway Shops, Inc. v. C.S.W. Consultants, Inc.,* 542 S.W.2d 308 (Mo.App.1976). On the record here it is inappropriate for us to undertake to say whether under applicable law the trustees are entitled to proceed further on any theory of unjust enrichment or transfer of corporate assets in fraud of creditors. Thus we do no more than emphasize that the action we take today is without prejudice to the rights, if any, of the trustees to pursue the corporate shareholders or other distributees of corporate assets for satisfaction of their judgment against East Painting, Inc., on any legal theory with respect to which the judgment of the district court here affirmed is not res judicata.

The judgment of the district court is affirmed.

---

8. Section 351.470 of the Missouri Revised Statutes includes a provision requiring that a notice of the dissolution be mailed to each known creditor of the corporation.