**ASSOCIATE ENGINEERING COMPANY, a corporation,**
**Appellant,**

v.

**Peter WEBBE, et al., Respondents.**

**No. 57162.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 28, 1990.

. Clyde E. Craig, St. Louis, for appellant.

Phillip Kent Gebhardt, Creve Coeur, for respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Associate Engineering Company, appeals from a final judgment of the Circuit Court for the City of St. Louis denying its claim for damages arising out of work performed at the Gateway Hotel in 1984. We affirm.

Char–Sor, Inc., was a Missouri corporation, originally incorporated in 1977 and dissolved on February 11, 1985. At the time the articles of dissolution were filed, there were four individuals listed as directors of Char–Sor, Inc.: Sorkis Webbe, Sr.; Sorkis Webbe, Jr.; and the respondents, Peter Webbe and Victor Sayyah. One of the functions of Char–Sor, Inc. was to operate the Gateway Hotel. This was done in conjunction with Sorkis Webbe, Sr. who had a triple-net lease with the owner of the Gateway Hotel, the Say–Web partnership. The partners of the Say–Web partnership were Victor Sayyah and Peter Webbe. Under the terms of the lease, the Say–Web partnership was to be paid $3,000.00 per month in rent for the Gateway Hotel and Char–Sor, Inc. and Sorkis Webbe, Sr. were to operate the hotel, be liable for all necessary repairs, and keep all resulting profits or losses.

In the fall of 1984, Sorkis Webbe, Sr., and the appellant entered into a contract for the installation of a heating and cooling piping system at the Gateway Hotel. Sorkis Webbe, Sr. signed these contracts in an individual capacity; there is no indication of his signing them on behalf of Char–Sor, Inc. or the Say–Web partnership. There is also no evidence that the respondents were involved in the negotiation of the contracts or were looked to for payment at the time the contracts were entered into.

The appellant completed the work on the Gateway Hotel in December of 1984 and submitted a bill on January 2, 1985, for $20,116.00. This bill was sent to Sorkis Webbe, Sr. An additional bill was sent on January 9, 1985—also to Sorkis Webbe, Sr. The total amount owed on the contracts was $41,058.15.

On February 11, 1985, Char–Sor, Inc. filed articles of dissolution with the Secretary of State. The articles of liquidation were signed by Sorkis Webbe, Jr. and filed on March 7, 1985. Article III of the articles of liquidation states "all debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefor."

Sorkis Webbe, Sr. continued to operate the Gateway Hotel until his death in early May in 1985. After Sorkis Webbe, Sr.'s death, and after Sorkis Webbe, Jr. was no

longer able to run the hotel,[1] the Say–Web partnership took immediate steps to create the Gateway Hotel Corporation to manage the hotel.

In 1986, after repeated failure to collect on his contract with Sorkis Webbe, Sr., appellant met with respondent Sayyah to discuss the debt. Sayyah failed to make any payments.

On September 11, 1987, appellant initiated this suit seeking recovery in quantum meruit for labor and materials. Appellant also sought to impose a constructive trust upon the personal assets of the respondents because they were involved in the "unlawful dissolution and liquidation of Char–Sor." A bench trial was held on February 21, 1989, and on July 5, 1989, the trial court denied appellant's claims. This appeal followed.

We initially note the standard of review in this case. In bench tried cases, this court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Quantum meruit or unjust enrichment occurs where a benefit is conferred upon a person under circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. *Erslon v. Vee–Jay Cement Contr. Co.,* 728 S.W.2d 711, 713 (Mo.App., E.D. 1987). The principal of unjust enrichment has given rise to the doctrine of quasi contract, also known as a contract implied in law, as a theory of recovery. *Id.* Courts generally recognize that the essential elements of quasi contract are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. *Id.* This last requirement—

that the enrichment of the defendant be unjust—is the most significant and, indeed, is the most difficult of all the elements to apply.

■ Neither party to this appeal has provided this court with cases analogous to the present one, relying, instead, on more general applications of the law. This court has found several cases, however, dispositive of this issue.

In *Puttkammer v. Minth,* 83 Wis.2d 686, 266 N.W.2d 361 (1978), the Supreme Court of Wisconsin was presented with facts very similar to our own. In *Puttkammer,* Minth was the owner of a supper club which he leased to a third party. Puttkammer, at the request of the third party, resurfaced the access and surface areas of the supper club with the knowledge of Minth "who stood by and acquiesced" in its completion. *Puttkammer* at 362. When the third party failed to pay for the work and was adjudged bankrupt, Puttkamer sued Minth in quantum meruit. The court stated that

this case is representative of the usual case in which the owner has no part in initiating the work and is merely a passive beneficiary of the work performed at the instance of another. The unjust enrichment or restitution claim is asserted by one who did the work, and produced an incidental gain to the owner, by merely performing his contract with another and is now dissatisfied because the return promised under the contract is not forthcoming. In a sense it can be said that the contractor, at least to the extent of the gain, seeks to make the owner an insurer of the contract entered into by the defaulting procurer. The fact that the owner knew of the work, acquiesced in its performance and voiced no disapproval of the work, does not make the owner liable. There is no allegation in the instant complaint from which it can reasonably be inferred that the work was done by authority of the owner.

---

**1.** The record is not clear as to exactly why Sorkis Webbe, Jr. was unable to operate the hotel.

*Id.* 266 N.W.2d at 365. [Footnote omitted.] The court further recognized the general rule that:

> [A] landlord or lessee [sic] cannot be held liable for materials furnished and labor performed by plaintiff on the leased premises where plaintiff entered into the undertaking looking only to the tenant or lessee for payment in the absence of anything to show that the landlord ordered the work, or authorized anyone to have it done, or ratified the work after it was done, and notwithstanding the landlord ultimately benefits from the work that was done by reason of his ownership of the property.[2]

*Id.* This same rule was also followed in *Callano v. Oakwood Parks Home Corp.*, 91 N.J.Super. 105, 219 A.2d 332 (1966). In that case, the defendant was engaged in the construction of housing developments. A third party contracted to buy a lot and hired Callano to plant shrubbery on the lot. The third party never paid the contractor for the shrubbery and, after his death, his estate cancelled the contract to purchase the lot. *Callano*, 219 A.2d at 334. Callano sued Oakwood in quantum meruit to collect on its contract with the third party.

The court stated that, although a representative of Oakwood knew of the planting, the plaintiff had entered into a contract with the third party and looked to him for payment—they did not look to the defendant for payment until after the third party had failed to pay. *Id.* at 335. Oakwood was, therefore, not liable to the third party.

Finally, in *Dalton v. Bundy*, 666 S.W.2d 443 (Mo.App., W.D.1984), the Missouri Court of Appeals for the Western District held that, where vinyl siding was put onto the side of a house at the request of the owner's parents and the parents defaulted, the owner was not liable to pay for the siding because no evidence existed to show that the siding was either requested or knowingly accepted by the owner. *Dalton*, 666 S.W.2d at 445.

In the present case, the plaintiff negotiated with Sorkis Webbe, Sr. and expected payment from Sorkis Webbe, Sr. not from the respondents. This court will not make the owner of property the insurer of a contract entered into by a defaulting tenant. Point denied.

■ Appellant next contends that the respondents are liable because they were part of an unlawful dissolution and liquidation of Char–Sor, Inc. Appellant's argument is based on the long settled principle that capital stock and other property of a corporation is deemed, between creditors and stockholders, to be a trust fund for the payment of debts. *Missouri Lead Mining & Smelting Co. v. Reinhard*, 114 Mo. 218, 21 S.W. 488, 491 (1893). Appellant claims that, as Char–Sor was liquidated while there was a debt owed by it to appellant, the liquidation was in violation of RSMo § 351.475(3) which requires that when a corporation dissolves, it must provide for the payment of its debts. Appellant further claims that the signing of the article of liquidation by Sorkis Webbe, Jr., article III of which stated that all debts have been paid for or provision made for their payment, constituted a fraud. Appellant, thus, contends that a constructive trust should be placed on the respondents for breach of their fiduciary duties to appellant, a creditor of the corporation.

In *Ward Parkway Shops v. C.S.W. Consultants*, 542 S.W.2d 308 (Mo.App., K.C.D. 1976), the lessor of business property, Ward Parkway Shops, entered into an office lease with C.S.W. Consultants for a term of five years. Shortly thereafter, C.S.W. defaulted on the lease and abandoned the premises. The sole shareholder of C.S.W. then filed for dissolution of the corporation. Included in C.S.W.'s article of liquidation was a statement that "All debts, obligations and liabilities of the corporation have been paid and discharged, or ... adequate provision has been made therefor." *Ward*, 542 S.W.2d at 310. Ward Parkway Shops then brought suit for the unpaid rents. The court noted that voluntary dissolution by written consent of all of the shareholders of a corporation was a conditional right and that one of the conditions

---

**2.** The court reversed this case later on other grounds.

was that all debts be paid or adequate provisions be made to pay them. *Id.* at 312–313. The court then found that the signed statement by the sole shareholder of C.S.W. to the effect that adequate provisions had been made to pay corporate debt created a presumption that the shareholder held the assets and made him a trustee for the benefit of Ward under a constructive trust. *Id.* at 313.

On its face, *Ward* would appear to be dispositive of the issue now before us. The *Ward* case, however, is distinguishable and not applicable in the present case. Unlike the defendant in the *Ward* case, the respondents at hand were not shareholders of the dissolved corporation; they were merely directors. There was no evidence presented at trial that they received any assets from the dissolution of the corporation and, as such, they cannot be holding corporate assets "in trust" for the appellant. The *Ward* case did not say, as appellant would have us hold, that an individual's *personal* assets could be attached to pay creditors of a dissolved corporation. It merely stated that shareholder's hold *corporate* assets in trust for the benefit of creditors. Absent a showing that corporate assets were distributed to the defendants, no constructive trusts could be created.[3]

 Finally, appellant urges this court to find that the respondents acted as agents for an undisclosed principal—the Say–Web partnership—with a substantial interest in the Gateway Hotel. Appellant seems to have pulled this argument out of thin air as it was not contained in their petition and was not argued before the trial court. Appellant urges that this matter was tried by implied consent because evidence was admitted on the issue without objection and because he argued it in a post-trial memorandum. We disagree. We do not believe that the purpose of the "trial by implied consent" rule is to allow parties to scour the Missouri Approved Instructions to find possible arguments matching the facts they presented at trial. It is the duty of counsel to do this *prior* to trial. The implied consent rule only applies where the evidence presented bears only on the new issue and is not relevant to issues already in the case. *Brazell v. St. Louis Southwestern Railway Co.,* 632 S.W.2d 277, 281 (Mo.App., E.D.1982). To follow appellant's suggestion would allow a party to try issues without giving full notice to the opposing party and, additionally, would be unfair to the trial court. We decline to permit this. Affirmed.

CRIST and HAMILTON, JJ., concur.

---

**3.** We also note that the defendants, prior to dissolving the corporation, had their accountants ensure that there were no debts owed by the corporation. As the appellant had mailed his bills to Sorkis Webbe, Sr., and not to the corporation, no debts could be found.