William D. GRAVES d/b/a Graves Construction, Appellant,

v.

Jerry BERKOWITZ, et al., Respondent.

No. WD 57374.

Missouri Court of Appeals, Western District.

Submitted Nov. 10, 1999.

Decided April 11, 2000.

Gary M. Steinman, Gladstone, for appellant.

Douglas M. Weems, Kansas City, for respondent.

Before JAMES M. SMART, Jr., P.J., JOSEPH M. ELLIS and EDWIN H. SMITH, JJ.

SMART, Judge.

This case concerns the issue of whether a contractor can establish a claim in *quasi contract* for unjust enrichment against a landlord for the remodeling of a tenant's space pursuant to a contract between only the tenant and the contractor.

Respondents Jerry and Lenore Berkowitz are the owners of a building at 10 th and Broadway in Kansas City. In 1994, the Berkowitzes agreed to lease the first floor and a portion of the basement to LTR, Inc. for a period of five years. LTR planned to open a restaurant. LTR engaged Appellant William D. Graves to remodel the space to make it suitable for the proposed restaurant. Graves and LTR anticipated that the construction work would cost about $250,000.00. Graves agreed to have the work completed for the opening of the restaurant in March 1995. Although LTR ceased making payments in February 1995, Graves and the subcontractors continued to work and completed the construction in time for the restaurant to open in March 1995.

The restaurant was open for three months before it closed. At the time LTR closed the restaurant, LTR still owed most of the amount due for the construction work. Graves and the subcontractors have been unable to collect from LTR.[1]

---

1. The deposition of Graves reveals that he had a rather unique relationship with the subcontractors, which was that they were not entitled to look to him for payment, but were to collect separately from LTR, Inc. While this arrangement does violence to the normal concept of contractor and subcontractor, we will nevertheless in this opinion refer to Graves as

In April 1996, Graves filed suit against the Berkowitzes, seeking to enforce a mechanics' lien, and also claiming recovery under theories of breach of oral contract and unjust enrichment. In June 1998, the court dismissed the mechanics' lien claim and the claim asserting breach of oral contract. On October 26, 1998, the trial court granted the motion of Mr. and Mrs. Berkowitz for summary judgment on the claim of unjust enrichment. Graves appeals the grant of summary judgment.

## Standard of Review

On an appeal from summary judgment, the appellate court's review is "essentially de novo." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The issue of whether summary judgment was properly granted is an issue of law. *Id.* Because the trial court's judgment is based solely on the record submitted and the law, we do not defer to the trial court's judgment in our review. *Id.* We review the record in the light most favorable to the party against whom judgment was entered. *Id.* The court examines whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II School Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994).

## Discussion

Appellant Graves contends that the court erred in granting summary judgment because there were genuine issues of material fact and it could not be said that the Berkowitzes were entitled to judgment as a matter of law. Our analysis requires a review of the concept of unjust enrichment in the context of the stipulated facts in order to determine whether summary judgment was properly granted.

The phrase "unjust enrichment" is used to characterize the effect of the failure of a party to make restitution where it ought to be made. The general principle is that one person should not permit himself to be unjustly enriched at the expense of another, but should be required to pay the value of benefits received or appropriated where it is just and equitable that such payment be made. *See Venture Stores, Inc. v. Pacific Beach Co.,* 980 S.W.2d 176, 186 (Mo.App.1998).

The essential elements of a *quasi contract* action of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying the value thereof. *Associate Eng'g Co. v. Webbe,* 795 S.W.2d 606, 608 (Mo.App.1990). The last element, the injustice of retaining the benefit without paying for it, has been called the "most significant" and also the "most difficult" of the elements. *Id.* One thing the courts consider is whether any wrongful conduct by the defendant contributed to plaintiff's disadvantage. *See Petrie v. LeVan,* 799 S.W.2d 632, 634 (Mo.App.1990). While a defendant's good faith or absence of fault does not necessarily preclude restitution, the defendant's innocence may affect the extent to which the defendant is liable. "Mere receipt of benefits" is not enough when there is no showing that it would be unjust for defendant to retain the benefit received. *Farmers New World Life Ins. Co. v. Jolley,* 747 S.W.2d 704, 706 (Mo.App. 1988).

## Contractor's Claims

The courts in various jurisdictions have not been uniform on the issue of whether a contractor is entitled to recover from an owner for construction contracted for by the tenant. This is true not only with regard to the claim of unjust enrichment, but also with regard to mechanic's lien claims. *See* Elaine Marie Tomko, Annota-

the contractor and the other construction en-                tities as subcontractors.

tion, *Landlord's liability to Third Parties for Repairs Authorized by Tenant,* 46 ALR 5th 1 (1997). While Missouri courts seem willing to enforce mechanics' lien claims against a landlord in such a context, most of the cases discussed below show that Missouri has traditionally been reluctant to allow recovery in unjust enrichment where the owner has been a passive beneficiary.

In *Rolla Lumber Co. v. Evans,* 482 S.W.2d 519 (Mo.App.1972), a lumber company provided building materials to a tenant of Mr. and Mrs. Evans. At the time the materials were being provided, the lumber company was looking only to the tenant for payment. *Id.* at 520. When the tenant did not pay, the lumber company informed the Evans that the company "would possibly look to" Mr. Evans for payment. *Id.* When the Evans declined to pay, the company sued them in *quasi-contract* on a theory of unjust enrichment. The trial court denied relief. On appeal, the court noted multiple evidentiary problems of plaintiff company in proving their case. The court then said that "[f]or an even more fundamental reason not reached in the briefs," plaintiff was not entitled to recover. Focusing on the fact that plaintiff's claim was one for unjust enrichment, the court, quoting from *Woodward, The Law of Quasi Contracts,* § 9, p. 10, stated that unjust retention of benefit occurs only when benefits are "conferred (a) 'in misreliance on a right or duty,' or (b) 'through a dutiful intervention in another's affairs,' or (c) 'under constraint.' " *Id.* The court also pointed out that "other authority" suggests that a claim of unjust enrichment can be based "only on an element of misconduct or fault or undue advantage taken by one party of another," citing, *inter alia,* 17 C.J.S. *Contracts* § 6, p. 573. *Id.* at 523. The court, accordingly, affirmed the judgment of the trial court in that case. *Id.*

In *Dalton v. Bundy,* 666 S.W.2d 443 (Mo.App.1984) the parents of a twelve-year old had transferred property to their daughter, and then had contracted with the installer to place siding on the house. The parents defaulted in paying for the siding. The record provided no evidence that the daughter had either requested the siding or knowingly accepted the benefit of it (and it was not even clear that the daughter resided in the house). *Id.* at 445. The court held that the daughter was not subject to personal liability in unjust enrichment for the payment of the work. *Id.* at 446.

In *Associate Eng'g,* 795 S.W.2d 606, the plaintiff had installed a piping system in a hotel. The hotel was owned by Victor Sayyah and Peter Webbe, and operated by a related corporation. *Id.* at 607. The contract for the installation of the piping system was entered into by Sorkis Webbe, Sr. (who, although he was a director of the operating corporation, signed the contract in an individual capacity) and Plaintiff. *Id.* There was no evidence that the corporation or the individual owners were involved in the negotiation of the contracts or that anyone intended either the corporation or the individual owners to be obligated on the contracts. *Id.* After the work was completed, the bills were submitted to Sorkis Webbe, Sr. who failed to pay. A month later the corporation was dissolved, and Sorkis Webbe, Sr. operated the hotel as an individual for several months until he died. *Id.* Two years later, the contractor brought a suit in *quantum meruit* for labor and materials against the property owners. *Id.* at 608. The trial court denied relief to the contractor.

Noting that the parties had not provided authorities in point, the court looked to cases in other jurisdictions, including *Puttkammer v. Minth,* 83 Wis.2d 686, 266 N.W.2d 361 (1978) and *Callano v. Oakwood Park Homes Corp.,* 91 N.J.Super. 105, 219 A.2d 332 (1966), and also discussed *Dalton,* mentioned above, all of which had denied relief when there was no evidence that the owner of the property ordered the work, ratified the work, or knowingly accepted the work. The court in *Associate Eng'g* concluded:

In the present case, the plaintiff negotiated with Sorkis Webbe, Sr. and expected payment from Sorkis Webbe, Sr., not from the respondents. This court will not make the owner of property the insurer of a contract entered into by a defaulting tenant.

*Id.* at 609.

In *Associate Eng'g,* and the cases cited and discussed therein, it would appear that in order to make a claim in *quasi contract* for unjust enrichment, the plaintiff must have evidence that the landlord was more than a passive beneficiary of the work. "The fact that the [landlord] owner knew of the work, acquiesced in its performance and voiced no disapproval of the work, does not make the [landlord] owner liable." *Puttkammer,* 266 N.W.2d at 365.

These cases seem contradicted somewhat by the 1999 decision of the Eastern District in *Webcon Group, Inc. v. S.M. Properties,* 1 S.W.3d 538 (Mo.App.1999). In that case, Webcon, a contractor, agreed to remodel certain premises for the operation of a restaurant. *Id.* at 541. Webcon negotiated with the restaurant operator, who had agreed to lease the premises from the owner. Title was held by co-trustees in a trust for the benefit of S.M. Properties, L.P. *Id.* at 540. Webcon performed the work, but was not paid by the restaurant operator. Webcon in turn did not pay the plumbing and electrical subcontractors. *Id.* at 541.

Webcon and the two subcontractors sued the tenant, one of the co-trustees, and the beneficial owner of the property, seeking a mechanics' lien, or in the alternative a judgment in unjust enrichment. *Id.* Because Webcon failed until much later to join the second co-trustee, the court rejected the mechanics' lien claim. *Id.* at 543. The court proceeded with the unjust enrichment claim. The trial court found it would be unjust for the owners to be allowed to retain the improvements without

compensating Webcon and the subcontractors. *Id.* at 542. The court awarded a judgment to the plaintiffs in *quasi contract* for unjust enrichment. The court of appeals affirmed the use of unjust enrichment in that context. *Id.* The trial court evidently found that the tenant was the agent of the landlord in *Webcon,* and that finding was apparently neither challenged on appeal, nor rejected by the Court of Appeals.[2] As far as we can tell from the opinion, in *Webcon* the arguments focused on the issue of whether the owners were benefited by the improvements. Also, apparently appellant in that case did not call to the attention of the court the 1990 decision of the court in *Associate Eng'g* discussed above.

On January 25, 2000, the same district of the court decided *Kujawa v. Billboard Café at Lucas Plaza, Inc.,* 10 S.W.3d 584 (Mo.App. E.D.2000), which seems in accord with *Associate Eng'g* and somewhat out of accord with *Webcon.* Paul Ebeling leased premises from Lucas Plaza Associates ("LPA"), intending to use the premises as a restaurant. *Id.* at 586. The space required construction work before it could be occupied as a restaurant and Ebeling hired Kujawa for the construction work. *Id.* The lease between LPA and Ebeling provided for a $75,000 "tenant finish" allowance. *Id.* at 586. Kujawa completed the remodeling of the restaurant space, and the restaurant opened. *Id.* at 586. LPA paid the "tenant finish allowance" directly to Kujawa. *Id.* at 586. Kujawa also was employed by an Ebeling-related corporation known as Tridon to remodel some office space in the same complex. *Id.* The restaurant closed six months after opening. *Id.* at 587. Kujawa ceased making improvements to the office space, and filed a mechanics' lien notice as to the restaurant and the office space. *Id.* Kujawa then sued to enforce his lien. Eventually, Kujawa voluntarily dismissed his mechanics' lien claim, but continued to prosecute his

---

**2.** The opinion in *Webcon* refers to the trial court "finding" that the tenant was the "agent" of the landlord. *Id.* at 542. We do not know the basis of that finding. If it was

based solely on the fact that there was a lease between the two, we suggest that such finding was inconsistent with *Associate Eng'g. See Associate Eng'g,* 795 S.W.2d at 607–09.

*quasi contract* claims. *Id.* at 588. The trial court granted summary judgment to defendants on Kujawa's unjust enrichment claim. *Id.*

Kujawa appealed, contending the trial court erred in granting defendant's motion for summary judgment in that there was a genuine issue as to whether defendants' retention of the benefits of his services without full compensation was inequitable. The court disagreed. Citing *Rolla Lumber Co.*, the court held that for an implied promise to be found, the person benefited must do something from which his promise to pay may be fairly inferred. *Id.* at 588. The court found no genuine issue here as to whether retention of the benefits was inequitable. The court found that Kujawa knew of the "tenant finish allowance" limitation in the lease, and knew that LPA's liability for the improvements was limited to those allowances. *Id.* at 589. The court also noted that Kujawa had looked only to Ebeling for payment of amounts beyond the tenant finish allowance. *Id.* The court concluded that, under the circumstances, a retention of the benefits by LPA would be neither unjust nor inequitable. *Id.* at 589.

In the case before us, the trial court also summarily denied relief, finding no genuine issue as to any material fact, and declaring as a matter of law that the Berkowitzes were entitled to judgment because there was no showing that it would be inequitable for the Berkowitzes to retain the benefit of the remodeling without paying for it.

There can be no liability on the part of the landlord without the conferring of a benefit, without "appreciation of the benefit" (which apparently in this context means knowledge of the work), and acceptance and retention of the benefit under circumstances whereby it would be inequitable for the landlord to retain the benefit without paying for it. *Associate Eng'g*, 795 S.W.2d at 608. The difficult part is determining what is necessary before the courts will declare it to be inequitable for the defendant landlord to retain the benefit without paying for it. The general trend of the Missouri cases discussed above is that there must be some fault or undue advantage on the part of the landlord, or some agency relationship between the tenant and the landlord – something more than passive acquiescence in the improvement to the premises.

In this case, we look at factors the trial court presumably considered. There is no evidence that LTR was acting as an agent for the Berkowitzes. The Berkowitzes, as landlords, had agreed to the construction in the lease, and were very aware of the construction, and, according to the lease, had the right to object to the construction design. However, there is no indication that they exercised that right. The evidence is that they were passive as to the construction design. There is also no indication that Graves ever looked to the Berkowitzes for payment. This is reflected in the fact that Graves never even made any demand on the Berkowitzes prior to filing a formal action. Graves knew early in the project that LTR was in default in paying for the construction, but Graves proceeded anyway without seeking any assurances of payment from the Berkowitzes, hoping to collect from LTR after the restaurant opened.

In summary, we conclude that the record shows that the Berkowitzes were nothing more than passive beneficiaries, and further shows that there was no implicit or express understanding that the Berkowitzes would guarantee payment. The trial court properly decided as a matter of law that it was not unjust for the Berkowitzes to retain any benefit from the construction without paying for it.

For the foregoing reasons, we conclude that the trial court did not err in granting summary judgment to defendants. The judgment is affirmed.

ELLIS and EDWIN H. SMITH, JJ., concur.