Mark MILLER and Bob Mahlandt d/b/a M & M Buildings, Appellant,

v.

Mary Ruth HORN, Respondent.

No. WD 68024.

Missouri Court of Appeals, Western District.

June 17, 2008.

Andrew J. Liles, St. Joseph, MO, for appellant.

R. Cristine Stallings, Bethany, MO, for respondent.

Before PAUL M. SPINDEN, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Mark Miller and Bob Mahlandt d/b/a M & M Building ("M & M") appeal the trial court's judgment in favor of Mary Horn on their claim for relief in quantum meruit. They contend that the court erroneously ruled that Mrs. Horn was not legally obligated in equity to provide compensation to M & M for services performed by M & M pursuant to a contract between M & M and Miles Horn, Mrs. Horn's late husband. The judgment is affirmed.

## Background

M & M is in the construction business, working out of Andrew County, Missouri. Miles Horn was a businessman living with his wife, Mary Horn, in Leon, Iowa. Mr. Horn operated some movie theaters, including one in Bethany, Missouri. Mr. Horn operated his business as a sole proprietor. On June 2, 2003, M & M entered into a contract with Mr. Horn for the construction of a new movie theater on separate land in Bethany.

Mr. Horn's plan was for a new multiple screen theater on South 29th Street. Mr. Horn arranged with his bank for a $475,000 line of credit, creating a lien against another property he and his wife owned on North 38th Street in Bethany as security for the line of credit. Mrs. Horn joined Mr. Horn in signing the deed of trust as security for the line of credit.

The original contract and addenda were drafted by M & M. The contract and all addenda referred to Mr. Horn as "owner" and bore his signature. There is no reference to Mary Horn in these documents. Mr. and Mrs. Horn owned both Bethany properties as tenants by the entirety.

M & M began construction of the movie theater and was part way through the construction process when Mr. Horn suddenly passed away. Mr. Horn had paid M & M over $193,000 for the construction work that had been invoiced to him. M & M presented evidence that it performed additional services after that payment and prior to receiving news of Mr. Horn's death. Upon Mr. Horn's death, Mrs. Horn, through her attorney, sent a letter to M & M requesting that, if work had not already ceased, she wanted the work on the movie theater to stop until Mrs. Horn could determine the circumstances. Thereafter, Mrs. Horn sold the real estate with the partially completed building for $100,000.

In May of 2005, M & M brought an action against Mrs. Horn in quantum meruit, claiming that Mrs. Horn had benefited from M & M's work at Mr. Horn's request and that the reasonable value for the labor, materials and equipment furnished in construction that remained unpaid was $153,166.16. Mrs. Horn did not concede that there was construction work of value that remained uncompensated to that point and did not agree that she had liability.

At a bench trial, Bob Mahlandt of M & M sought to imply that Mrs. Horn was active in the project, but he admitted that his negotiations were with Miles Horn and not with Mrs. Horn. Mrs. Horn was not present for the contract signing and did not participate in contract negotiations. Mr. Mahlandt testified that Mrs. Horn was present for one meeting with the architect and builder (though she spent most of the time waiting in the hallway during the meeting) and was present at the groundbreaking. Mahlandt also testified that Mrs. Horn often took messages from him for Mr. Horn, but Mahlandt admitted that he dealt exclusively with Mr. Horn on mat-

ters concerning the construction. He never asked Mrs. Horn about anything related to the contract or the construction. The only participation by Mrs. Horn that he remembered, aside from her presence with Mr. Horn on a few of Mr. Horn's trips to Missouri, was one suggestion he remembered her communicating to Mr. Horn about the women's bathroom in the theater.

Charles Ellson, Mr. Horn's previous attorney, testified that Mr. Horn handled all the Horns' business matters. He testified that Mrs. Horn was not involved in the theater business in any way except that she occasionally sold popcorn and candy from the concession stand at the theaters.

Mary Horn testified that she had very limited, minimal involvement in the movie theater business. She accompanied her husband on some of his trips to spend time together. She was able to write checks on the business account and occasionally wrote and signed checks at her husband's specific request. She said that she was present for the groundbreaking of the new proposed theater and also that she had made a suggestion about the women's bathroom. She also occasionally worked at Mr. Horn's theaters by making popcorn or taking tickets. She testified that Mr. Horn handled the business matters and rarely talked to her about business decisions. She stated that it was not until after Mr. Horn's death that she discovered the extent of the contract with M & M.

Mary Horn's daughter-in-law also testified. She corroborated Mary Horn's testimony that Mr. Horn handled the business matters and did not discuss business with his wife.

The court issued its judgment on December 28, 2006. The court found that Mr. Horn was not acting as an agent for Mrs. Horn. The court found that Mrs. Horn had very limited knowledge of the contract between Mr. Horn and M & M and that Mr. Horn rarely discussed business issues with Mrs. Horn. The court regarded Mrs. Horn's minimal involvement as simply a normal spousal interest in her husband's activities. The court further found that the work completed by M & M did not add value to the property in excess of the amount Mr. Horn had already paid to M & M prior to his death. The court made no specific finding as to the extent of work performed after the last paid invoice, and made no finding as to the reasonable value of uncompensated services provided since such last payment, other than the finding that the services provided were not of greater value than the amount of compensation already received. The court concluded it would be equitable and just to allow Mrs. Horn to retain the proceeds of the sale. The court entered judgment in favor of Mrs. Horn.

M & M appeals.

## Standard of Review

■ In cases tried by a court we will uphold the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In this case there appears to be little contention about the facts of the case or the applicable law. Instead, the parties are in disagreement as to how the law applies to the facts of the case. Thus, our inquiry will be as to whether the trial court erred in applying the law.

## Discussion

■ M & M sued Mrs. Horn personally under the equitable theory of quantum meruit, not on the construction contract. M & M's petition does not allege that Mr.

Horn was acting as Mrs. Horn's agent or that she was an undisclosed principal. Instead, the pleaded theory of M & M was based on the fact that Mrs. Horn was a co-owner of the property during the construction process and received the property as her own at her husband's death by virtue of the tenancy by the entirety. M & M pleaded that she acquiesced in the construction and accepted a benefit from the construction under circumstances by which equity should require her to pay for the benefit received.

■ Quantum meruit is a quasi-contractual remedy and is generally justified on the theory of unjust enrichment. *JB Contracting, Inc. v. Bierman*, 147 S.W.3d 814, 818 (Mo.App.2004). Unjust enrichment occurs where a benefit is conferred upon a party under circumstances in which the retention of such benefit, without paying its reasonable value, would be unjust. *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo.App.2003). The elements of unjust enrichment are: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit." *Id.*

■ The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements. *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo.App.2000). Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit. *S & J*, 108 S.W.3d at 768. The fact that a party knew of the work, acquiesced in its performance and voiced no disapproval of the work does not in itself make the party liable. *See Graves*, 15 S.W.3d at 63 (landlord knew of construction work arranged by tenant and acquiesced in the construction, but was mere "passive beneficiary").

■ Generally, a spouse with a business proprietorship is not an agent for his or her spouse. *See Cohn v. Dwyer*, 959 S.W.2d 839, 843 (Mo.App.1997) (recognizing this principle, but holding wife jointly and severally liable under oral indemnification agreement articulated by husband where there was "strong evidence" that the non-acting spouse had cloaked the other with apparent authority to act in business matters on her behalf). Before one spouse can be held liable for another spouse's legal obligations in actions at law, there must be evidence of agency, or of ratification, by the spouse. *Id.* at 843–44. Ratification can occur when a spouse confirms or adopts an agreement with knowledge of its contents. *Id.* at 844.

This action was in equity and was not an action on contract, but ratification could still be relevant to the creation of an equitable duty to pay. *Graves*, 15 S.W.3d at 63–64. Here, there was no evidence of ratification because Mrs. Horn promptly stopped the construction and sought only to dispose of the property. M & M nevertheless argues that Mrs. Horn was such an active participant in the project that she could not be considered a mere passive beneficiary, and therefore she should pay. M & M makes much of the fact that Mrs. Horn joined in the deed of trust to secure the line of credit. That, of course, shows only that the bank wanted to be sure that her marital interest was included in the lien. The record does not show that she was an obligor on the note to the bank; it shows only that she joined in granting security. This, along with the fact that M & M's contract is only with Miles Horn and refers only to him as "owner," is consistent with the notion that Mr. Horn preferred to carry out his financial operations without his wife's involvement. The evidence of Mrs. Horn's active participation is not strong. *See id.*

In any event, even if the court had been wrong about whether Mrs. Horn ought to be considered to have been an active participant, it was necessary for M & M: (1) to establish that she received a benefit; and (2) to establish the amount of that benefit; and (3) to show that it would be unjust for her to keep the proceeds of the sale. *See id.* at 61, 64. The court here found that the work performed by plaintiffs did not add value to the property beyond the amount Miles Horn had already paid M & M prior to his passing. If no benefit (beyond the amount already paid) were conferred, equity obviously cannot require any payment from the spouse receiving the property on the death.

Unjust enrichment can occur only when a person *retains* a *benefit* without paying its reasonable value. *Id.* To recover under quantum meruit, it is the plaintiff's burden to show that its services benefited the defendant. *See Hosp. Dev. Corp. v. Park Lane Land Co.,* 813 S.W.2d 904, 910 (Mo. App.1991). The plaintiff must also show the *amount* of the benefit. *Kinetic Energy Dev. Corp. v. Trigen Energy Corp.,* 22 S.W.3d 691, 697 (Mo.App.1991). This may be accomplished by showing proof of the reasonable value of the services performed. *Id.* Reasonable value is the price customarily paid for such services at the time and locality in question. *Id.* Proof of reasonable value is not accomplished simply by reciting the bill or referring to the contract, or stating the "standard price" that plaintiff usually would charge for such service. *Id.* at 698. There must be evidence establishing the objective reasonableness of plaintiff's charges. *Id.* Here, there was none. There also was no other evidence objectively establishing the benefit conferred in terms of market value added to the property by the construction.

In this case, Mr. Horn had paid M & M a total of $193,665 for the work performed.

Mrs. Horn sold the land, with the partially constructed building on it, for $100,000. It is apparently not disputed that the sale was an arm's length transaction. Plaintiffs did not prove what Mr. Horn paid in the first place to acquire the land and did not prove that their services added value to the land. It was reasonable for the trial court to conclude that the actual market value of the land at the time it was sold was $100,000, the amount established by the sale price. *See Crabby's, Inc. v. Hamilton,* 244 S.W.3d 209, 217 (Mo.App.2008) (price obtained at a recent sale is evidence of market value).

The value of the land in the hands of Mrs. Horn was substantially less than the alleged cost of the work already paid for and the cost of acquiring the land (which presumably had some commercial value before the construction began).

The burden of showing that a benefit was conferred *after* Miles Horn had already paid $193,000, and the value of that benefit, rested on M & M. *Kinetic Energy,* 22 S.W.3d at 697. M & M failed to prove the extent of any benefit received by Mrs. Horn. If Mrs. Horn were benefited at all by any uncompensated construction services, M & M failed to provide the trial court with tools to measure that benefit.

The trial court could, we assume, reasonably conclude that Mrs. Horn was no more than a passive beneficiary of M & M's services and that she did not ratify the contract upon Mr. Horn's death. This is indicated by her lack of substantial involvement during construction, by her immediate ceasing of construction, and by her prompt sale of the property with only a partially completed theater building.

The trial court did not err in concluding that Mrs. Horn was not benefited by any of M & M's uncompensated construction services, because the benefit was not shown. Accordingly, we will not reverse

the trial court's conclusion that justice does not require that Mrs. Horn pay to M & M the proceeds of the sale of the land.

### Conclusion

For all of the foregoing reasons, the judgment is affirmed.

SPINDEN and ELLIS, JJ., concur.