Kimble A. COHN and Sherrye Cohn, Plaintiffs–Appellant,

v.

James J. DWYER, Jr., and Noel Dwyer, Defendants–Respondents.

No. 71270.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 15, 1998.

Application for Transfer Denied Feb. 24, 1998.

---

J. Peter Schmitz, St. Louis, for plaintiffs–appellants.

Alan G. Kimbrell, St. Louis, for defendants–respondents.

AHRENS, Presiding Judge.

In·this jury tried case, plaintiffs, Kimble and Sherrye Cohn brought an action for breach of contract against defendants, James and Noel Dwyer. The jury returned a verdict finding both defendants liable on the agreement and assessed damages against James Dwyer in the amount of $291,710.24 and $0 against Noel Dwyer. Plaintiffs appealed, alleging both defendants were responsible for the full amount of their damages. Defendant Noel Dwyer cross-appealed, asserting there was insufficient evidence to support the jury's finding that she was liable on the agreement. We reverse and remand with instructions.

Viewing the record in the light most favorable to the verdict, the following evidence was adduced at trial. James Dwyer and Kimble Cohn formed the Century Venture Redevelopment Partnership in December 1985. The partnership's purpose was to renovate a building in downtown St. Louis. The partnership borrowed $11,750,000 from Mercantile Bank to finance the project and gave a deed of trust on the property to the bank to secure the loan. Both partners and their wives signed a continuing guaranty agreement of the partnership debt with the bank.

The partnership began to experience significant cost overruns in early 1987 and the bank demanded additional collateral pursuant to the continuing guaranty agreement. Prior to June 22, 1987, James Dwyer and Kimble Cohn reached an oral agreement whereby the Dwyers would indemnify the Cohns for 50% of the value of any securities to be deposited by Cohns that the bank may dispose of. On June 22, 1987, the Cohns responded to the bank's demand by depositing securities with a market value of $620,000 with the bank as additional collateral. Both parties and their wives consented to the Cohns' pledging of the additional security pursuant to the continuing guaranty agreement. The Cohns and Dwyers reduced the oral indemnification agreement to writing on August 19, 1987 and both partners and their wives signed the agreement.

The renovation project continued to struggle financially and the partnership began to experience difficulties in servicing the debt to Mercantile. In late December 1988, Mercantile released $103,770.95 worth of the Cohns' securities to the partnership for improvements in hopes of attracting additional ten-

ants to the building. On April 26, 1989, James and Noel Dwyer sent a letter to the Cohns confirming their agreement to indemnify the Cohns for 50% of the value of any of the securities Mercantile disposed of. The partnership's financial condition continued to deteriorate and by April 1991, Mercantile had disposed of $583,420.48 worth of the Cohns' securities.

When the Dwyers failed to reimburse the Cohns for 50% of the value of the securities Mercantile disposed of, the Cohns brought suit in St. Louis County Circuit Court for breach of the oral indemnification agreement. Cohns sought judgment against the Dwyers jointly and severally. At trial, the Cohns attempted to submit an instruction that if the jury found in the Cohns' favor, the full amount of damages must be assessed against both defendants. The trial court rejected this proposed instruction.

The jury returned a verdict against both the Dwyers for breach of contract and determined the Cohns' damages to be $291,710.24. However, the jury apportioned the damages between the defendants by assessing the entire amount of the damages against Mr. Dwyer and $0 in damages against Mrs. Dwyer.[1] The Cohns made a post-trial motion to vacate the judgment against James Dwyer and enter judgment against both de-

fendants for the full amount of damages. Noel Dwyer moved for a Judgment Notwithstanding the Verdict (JNOV) asserting that there was insufficient evidence to support the jury's finding that she was liable on the indemnification agreement. Noel Dwyer also filed a motion for new trial alleging that the jury instructions were not proper. The trial court denied all post-trial motions and this appeal followed.

Because Mrs. Dwyer challenges the jury's determination that she is liable on the indemnification agreement, we will address her points before we address the Cohns' points dealing with the jury's apportionment of damages. Mrs. Dwyer first asserts that the trial court erred in denying her motion for a JNOV on the issue of her liability on the indemnity agreement. A party may only raise issues in a motion for a JNOV it properly put before the court in a motion for a directed verdict at the close of all the evidence. Rule 72.01(b); *Fust v. Francois*, 913 S.W.2d 38, 45 (Mo.App.1995). Here, the record on appeal does not indicate that Mrs. Dwyer made a motion for a directed verdict at the close of the evidence. Thus, Mrs. Dwyer's post-trial motion for a JNOV was without a proper basis and preserves nothing for appellate review. Rule 84.13(a); *Dierker Associates v. Gillis*, 859 S.W.2d 737, 743 (Mo.

1. The Cohns have included in the record four notes which the jury submitted to the judge during the jury's deliberations. Each vote was signed by the same juror. The first note read: "Were we to write an amount on Verdict A, would putting that amount on B be an addition to A?" The court responded in writing that the jury was to be guided by the instructions and evidence.

The jury next submitted two notes to the judge: "We want to award a total of $291,710.24 to the Cohn's, we are unsure as to how we put this on the two verdict sheets." The second note read: "Can we award a greater amount of damages than is being asked for?" The court made the same response.

The final note from the jury read: "Can we put a qualifying statement of the verdicts?" The court made the same response.

The Cohns also submitted affidavits from five of the ten jurors who signed the verdict. Each affidavit stated in part:

"3. During jury deliberation on June 14, 1996, the jurors who signed the verdicts wanted to award the sum of $291,710.24 against

both defendants but were in doubt about how to do this on the two verdict forms provided in the instructions. The jury was concerned that if they entered the damage figure on the second verdict form they would be doubling the amount of damages awarded.

4. The jury sent notes to the judge asking for further instructions on the aforesaid matter of concern but received no further instructions. In the absence of any instruction from the court on this point, we did the best we could and filled out the verdict forms as attached.

5. In finding in favor of plaintiffs as against both defendants but awarding no damages against defendant Noel Dwyer, we did not intend to find in favor of Mrs. Dwyer or that the effect of our action would be to exonerate her from any legal responsibility for the plaintiff's damages."

The Cohns assert these notes and affidavits explain an ambiguous verdict. Mrs. Dwyer argues these notes and affidavits should not be considered because they improperly impeach the verdict. Because the reason why the jury attempted to apportion the damages is irrelevant to our analysis, we need not address this issue.

App.1993). We have reviewed the record and find that no manifest injustice resulted from the trial court's denial of Mrs. Dwyer's motion for a JNOV. Therefore we find no plain error and Mrs. Dwyer's first point is denied. Rule 84.13(c).

Mrs. Dwyer next asserts the trial court erred in submitting jury instructions numbers ten and eleven. Instruction number ten was the verdict director against Noel Dwyer. Instruction number eleven addressed whether Mrs. Dwyer was the agent of Mr. Dwyer. Mrs. Dwyer failed to object to these instructions at trial and only objected to them in her motion for a new trial. Before the Supreme Court modified Rule 70.03 in 1994, contemporaneous objections to jury instructions were not required to preserve claims of error. *See Cornell v. Texaco,* 712 S.W.2d 680, 682 (Mo. banc 1986). However, at the time of trial, Rule 70.03 read in relevant part:

> "No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to considers its verdict, stating distinctly the matter objected to and the grounds of the objection."

Thus, under the applicable version of Rule 70.03, a party must object to the jury instructions at trial before the jury retires in order to preserve claims of error for appellate review. *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 364 (Mo.App. 1995).

In the present case, the record on appeal reflects that Mrs. Dwyer failed to object to either jury instruction numbers ten or eleven before the jury retired to consider its verdict. She therefore failed to preserve for appellate review her allegations of error with respect to the jury instructions. We have reviewed the record and find that the trial court's submitting the challenged jury instructions did not constitute manifest injustice or a miscarriage of justice. Therefore, we find no plain error and Mrs. Dwyer's second and third points are denied. Rule 84.13(c).

We next address the Cohns' claim that the trial court erred in denying their post-trial motion to vacate the judgment against James Dwyer and to enter judgment against both Noel and James Dwyer for the full amount of damages. The Cohns first argue that both James and Noel are jointly and severally liable on the contract. We agree.

■ Courts should presume that when two or more parties are bound under a contract, the contract is joint. *Don L Tullis & Assoc. v. Gover,* 577 S.W.2d 891, 900 (Mo. App.1979). Also, courts must construe joint contracts as giving rise to joint and several liability. *Lowes v. Penrod,* 767 S.W.2d 616, 617–18 (Mo.App.1989); Section 431.110 RSMo. (1994). In the instant case, the jury found that both James and Noel Dwyer were liable on the oral indemnification agreement. However, Noel Dwyer contends that her husband's oral agreement with Kimble Cohn and her signing of the agreement once the parties memorialized it failed to bind her to the agreement and therefore she could not have been jointly and severally liable on the agreement. We reject this contention.

We will uphold the jury's verdict if there is sufficient evidence in the record so that a reasonable juror could find Mrs. Dwyer liable on the oral indemnification agreement. *Uptergrove v. Housing Authority,* 935 S.W.2d 649, 655 (Mo.App.1996). Spouses are not generally agents and principals for each other. *Holtmeier v. Dayani,* 862 S.W.2d 391, 403 (Mo.App.1993). However, one spouse's action will bind the other spouse if the non-acting spouse cloaked the acting spouse with apparent authority to act on his or her behalf or if the non-acting spouse later ratifies the agreement. *Id.* We find there was sufficient evidence from which a reasonable juror could have found that Noel Dwyer cloaked her husband with apparent authority and that she ratified the oral agreement.

■ In the husband-wife context, one spouse cloaks the other with apparent authority to act on his or her behalf if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her. *Id.* The fact that one spouse customarily allows the other spouse to handle the business transactions of the couple is strong evidence that such an inference exists. *Id.*

■ Here, Mrs. Dwyer, along with her husband, signed the continuing guarantee of the partnership debt to Mercantile when it made the original $11,750,000 loan to the partnership. Also, Mrs. Dwyer acknowledged the Cohns' pledging of the additional collateral to Mercantile pursuant to the continuing guarantee agreement. Finally, Mr. Cohn testified that he had conducted business with the Dwyers preceding the formation of the partnership and Mrs. Dwyer customarily allowed Mr. Dwyer to handle business transactions on her behalf. We find on this record that there is sufficient evidence to allow a reasonable juror to find that Mrs. Dwyer cloaked her husband with apparent authority to act on her behalf in executing the oral indemnification agreement.

■ There was also evidence from which a reasonable juror could have found Mrs. Dwyer liable on the theory she ratified the oral agreement. One who was not originally bound by an agreement will become bound if he or she later ratifies the agreement. *Holtmeier*, 862 S.W.2d at 403. A party ratifies an agreement if he or she either expressly or by implication confirms or adopts the agreement with knowledge of its contents. *Unlimited Equipment Lines, Inc. v. Graphic Arts Centre, Inc.*, 889 S.W.2d 926, 936 (Mo.App.1994).

■ In the present case there is ample evidence to support a finding that Mrs. Dwyer expressly adopted the oral indemnification agreement. First, Mrs. Dwyer signed the indemnification agreement in August of 1987. She also signed the April 26, 1989 letter confirming the indemnification agreement which the Dwyers sent to the Cohns after Mercantile had disposed of a portion of the Cohns' securities in January 1989. These two acts by Mrs. Dwyer support a finding that she expressly adopted the oral indemnification agreement and therefore ratified it.

■ Mrs. Dwyer counters by asserting that she cannot be liable on the indemnification agreement on two grounds First, Mrs. Dwyer argues that neither her husband or herself expressed an intent to the Cohns that she would be bound on the indemnification agreement at the time her husband and Mr. Cohn entered into the agreement Therefore, Mrs. Dwyer reasons, a contract between her and the Cohns could not have been formed.

However, the Cohns have based their claim on the law of agency. As noted above, the record supports a finding that Mr. Dwyer had both apparent authority to act on her behalf in executing the indemnification agreement and that Mrs. Dwyer ratified the agreement. A principal will be liable on an agreement to a third party under the concept of apparent authority if the facts and circumstances give rise to an *inference* that the principal has empowered the agent to act on his or her behalf. *Holtmeier*, 862 S.W.2d at 403. Thus, the fact that a party or his or her purported agent has not manifested an intent to be bound by an agreement is not dispositive in determining whether he or she is liable on an apparent authority theory. *See Id* at 403–04.

■ Second, Mrs. Dwyer maintains that although she may have ratified the indemnification agreement, it was not binding upon her since she did not receive independent consideration to support her ratification. When one ratifies a contract, it is as if the person affirmed the contract at the time it was made. *Southwestern Bell Yellow Pages, Inc. v. Dye*, 875 S.W.2d 557, 562 (Mo.App. 1994). Thus, ratification operates outside the rules of contract law and requires no new consideration. *See* Restatement (Second) of Agency section 82, cmt. c. Therefore, there is sufficient evidence to support the jury's finding that she was bound on the oral contract based on the law of agency. Thus, we must affirm the jury's finding that Mrs. Dwyer is liable on the oral indemnification agreement.

The jury also found that the Cohns were entitled to damages in the amount of $291,-710.24. However, the jury apportioned the damages finding Mr. Dwyer liable for the entire of the Cohns' damages and Mrs. Dwyer liable for $0. After the jury returned its verdict the Cohns' counsel immediately advised the trial court that the jury's verdict was improper because it apportioned the damages between defendants who were joint-

ly and severally liable. However, despite the Cohns' counsel's protestations, the trial court entered judgment against Mr. Dwyer in the amount of $291,710.24 and $0 against Mrs. Dwyer. The Cohns then filed a motion to vacate the judgment against Mr. Dwyer and enter judgment against both defendants for the full amount of damages. The trial court denied this motion. The Cohns' assert that the trial court erred in not entering judgment against both Mr. and Mrs. Dwyer for the entire amount of damages. We agree.

■ Mrs. Dwyer maintains, without citation to any authority, that even if the verdict was improper, the Cohns' failed to preserve the allegation of error for appellate review since they did not file a motion for a new trial as to damages. It is true that generally, appellants must include allegations of error in either a motion for a new trial or in a motion for a JNOV to preserve them for appellate review. Rule 78.07. However, a motion for a new trial was not appropriate here since, as noted below, the Cohns were entitled to judgment against both defendants for the full amount of damages as a matter of law. Also, the Cohns could not have moved for a JNOV since they obviously could not have challenged the jury's apportionment of damages in a motion for a directed verdict at the close of the evidence. See Rule 72.01(b).

The Cohns' post-trial motion to vacate the judgment did assert (1) the Dwyers were jointly and severally liable, (2) the jury's attempt to apportion damages between the Dwyers was therefore improper and (3) the court was required to ignore the jury's apportionment of damages between defendants and enter judgment against both defendants for the full amount of damages. Thus, the Cohns' motion to vacate the judgment clearly gave the trial court an opportunity to correct its error. Further, the Cohns filed their post-trial motion within the 30 day time requirement for filing motions for a new trial and a JNOV. See Rules 72.01(b); 78.04. Given the unique facts of this case, we conclude that the Cohns' post-trial motion to vacate the judgment preserved their allegation of error for appellate review. See Frisella v. Reserve Life Ins. Co., 583 S.W.2d 728, 731 (Mo.App.1979); Williamson v. Cox, 844 S.W.2d 95, 99 (Mo.App.1992).

■ We next address the merits of the Cohns' claim that the trial court should have ignored the jury's attempt to apportion damages and entered judgment against both Mr. and Mrs. Dwyer for the entire amount of the Cohns' damages. A trial court must accept a jury's verdict and enter judgment on it if the verdict finds substantially on the questions in dispute. Campbell v. Kelley, 719 S.W.2d 769, 771 (Mo. banc 1986). Also, we must liberally construe the verdict to ascertain the jury's intent. Id.

Here, Mrs. Dwyer argues that the trial court did not err in accepting the jury's attempt to apportion damages between herself and her husband. Mrs. Dwyer bases this assertion on two grounds. First, she points us to several cases that stand for the proposition that if the amount of damages are in dispute, the jury's determination of the amount of damages must generally stand. See Roark Motor Lodge Interval Sales Corp. v. Lindner, 779 S.W.2d 684, 686 (Mo.App. 1989). However this line of cases is not on point here since the Cohns are challenging the jury's apportionment of damages, not the jury's determination of the amount of damages.

■ Second, Mrs. Dwyer maintains since the jury returned a verdict assessing zero dollars of damages against her, the jury essentially found in her favor. In support of this proposition, Mrs. Dwyer cites us to a line of cases that intimate that a zero damage award may be a defendant's verdict. However, this rationale only applies when damages are a prima facie element of the plaintiffs' claim. See Jenkins v. Revolution Helicopter Corp., 925 S.W.2d 939, 942–43 (Mo.App.1996). Damages are not a prima facie element of a breach of contract claim. Gee v. Payne, 939 S.W.2d 383, 387 (Mo.App.1997). Thus, the zero damage cases have no relevancy to the present case.

■ The issue here is whether the jury's apportionment of damages between Mr. and Mrs. Dwyer was valid. Defendants who are jointly and severally liable on a contract are individually liable for the entire amount of

the plaintiffs' damages. *Lowes v. Penrod,* 767 S.W.2d 616, 617–18 (Mo.App.1989). Thus, the only issues the jury must decide when liability is joint and several are whether the defendants were liable and if so, the amount of the plaintiffs' damages. Once the jury determines these issues, the trial court must enter judgment against all defendants for the entire amount of damages. *State ex. rel. St. Louis Public Service Co. v. Becker,* 334 Mo. 115, 66 S.W.2d 141, 146 (1933); *Crystal Tire Co. v. Home Service Oil,* 465 S.W.2d 531, 535 (Mo.1971). Therefore, any attempt by the jury to apportion damages between defendants who are jointly and severally liable has no legal effect and must be ignored by the trial court. *Becker,* 66 S.W.2d at 141.

Here the jury found both Mr. and Mrs. Dwyer liable. The jury also found that the Cohns suffered damages in the amount of $291,710.24 due to the Dwyers' breach of the indemnification agreement. Thus, the jury found substantially on all the issues in dispute in this case and the trial court was required to accept the verdict. Also, its attempt to apportion the damages between Mr. and Mrs. Dwyer had no legal effect. Therefore, the trial court committed reversible error when it accepted the jury's apportionment of damages and entered judgment on it.

The judgment of the trial court as to Noel Dwyer is reversed and remanded with instructions to enter judgment against Noel Dwyer in the amount of $291,710.24. The judgment, when entered, shall be joint and several with the judgment against James J. Dwyer, Jr.

CRANDALL and KAROHL, JJ., concur.