

# Missouri Court of Appeals
## Southern District

### In Division

JOAN RISTER and FRED RISTER,    )
    )
    Plaintiffs-Respondents,    )
    )
v.    )    No. SD37374
    )    Filed: August 30, 2023
NHC HEALTHCARE – OSAGE    )
BEACH, LLC, d/b/a OSAGE BEACH    )
REHABILITATION & HEALTHCARE    )
CENTER,    )
    )
    Defendant-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Matthew P. Hamner, Circuit Judge

### AFFIRMED

NHC Healthcare–Osage Beach, LLC (NHC) appeals from an order denying NHC's motion to compel arbitration with Joan Rister (Joan), a resident at NHC's skilled nursing facility (the Center). Joan did not sign the arbitration agreement. Instead, it was signed by her husband, Fred Rister (Fred).[1] No evidence appears in the record that Fred had any authority to sign as Joan's legal representative.

---

[1] Because Joan and Fred share the same last name, we refer to them individually by their first names for purposes of clarity. Collectively, we refer to them as the Risters.

Presenting two points on appeal, NHC contends the trial court erred in denying the motion to compel arbitration. Point 1 argues that the arbitration agreement applies to disputes arising out of Joan's stay at the Center and permits execution by her "Legal Representative" within the meaning of the arbitration agreement. Point 2 argues that Joan was a third-party beneficiary to the agreement because she accepted a benefit from the agreement and was, therefore, estopped from denying its effect. Finding no merit in these arguments, we affirm.

## Standard of Review

When there are factual disputes regarding the existence of an agreement to arbitrate, the trial court must determine "whether an arbitration agreement exists." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020); *see Trunnel v. Missouri Higher Educ. Loan Auth.*, 635 S.W.3d 193, 197-98 (Mo. App. 2021); § 435.355.1.[2] The party asserting the existence of a valid and enforceable contract to arbitrate bears the burden of proving that proposition. *Duncan v. TitleMax of Mo., Inc.*, 607 S.W.3d 243, 249 (Mo. App. 2020). "Missouri contract law governs whether an arbitration agreement is valid and

---

[2] All statutory references are to RSMo (2016), and all rule references are to Missouri Court Rules (2021). The procedure Missouri courts follow is set out in the Missouri Uniform Arbitration Act (MUAA). *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003). The relevant MUAA procedure, found in § 435.355, provides:

> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party *denies the existence of the agreement to arbitrate*, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

§ 435.355.1 (emphasis added); *Theroff*, 591 S.W.3d at 436 n.3.

enforceable." ***Bridgecrest Acceptance Corp. v. Donaldson***, 648 S.W.3d 745, 751 (Mo. banc 2022).

An appellate court's review of the trial court's determination as to the existence of an agreement itself is analogous to that in a court-tried case. ***Theroff***, 591 S.W.3d at 436.

> As such, in an appeal from a [trial] court's order overruling a motion to compel arbitration when there is a dispute as to whether the arbitration agreement exists, the [trial] court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

***Id***. (internal footnote omitted); *see* Rule 84.13(d); ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976); ***Lopez v. GMT Auto Sales, Inc.***, 656 S.W.3d 315, 320-21 (Mo. App. 2022). We decide issues of law *de novo*. ***Missouri Ozarks Radio Network, Inc. v. Baugh***, 598 S.W.3d 154, 158 (Mo. App. 2020). Issues relating to the existence of an arbitration agreement, however, are "factual and require our deference to the [trial] court's findings." ***Lopez***, 656 S.W.3d at 321 (citation omitted).[3]

### Factual and Procedural Background

On September 16, 2020, Joan was admitted into the Center. That same day, Fred executed a "Preadmission Agreement" and a "Voluntary Agreement to Arbitrate and Waive Jury Trial" (Arbitration Agreement).

The Preadmission Agreement identified the "Patient" as Joan, and included a line for the "Name of Legal Representative (if applicable)" but that line was left blank. The agreement went on to define a "legal representative" as "anyone authorized by the Patient

---

[3] If there is *no factual dispute* about the existence of an arbitration agreement, the denial of a motion to compel arbitration is reviewed *de novo*. ***Theroff***, 591 S.W.3d at 436. A *de novo* standard of review is appropriate because this Court must then analyze the terms of the arbitration agreement, and contract interpretation is a question of law. ***Id***.; *see* ***Bridgecrest***, 648 S.W.3d at 751.

or by law to act on the Patient's behalf." Several boxes followed to indicate the "Type (check one)" of legal authority, specifying: (1) "Power of Attorney" (POA); (2) "Limited, Durable POA"; (3) "Unlimited/Durable POA"; (4) "Guardianship"; (5) "Health Care Agent/Proxy"; or (6) "Surrogate[.]" None of these boxes were checked. On the last page of the Preadmission Agreement, Fred signed his name on the "Patient" signature line.

The Arbitration Agreement opened with a paragraph stating, in bold print, that signing that agreement was *not* a condition of admission:

> Execution of this Agreement by or on behalf of the patient is not a condition of admission to, or a requirement to continue receiving care at, the Center. In other words, the resident has the right not to sign this agreement and still be admitted to, or continue receiving care at, the Center.

On the last page of the Arbitration Agreement, Fred signed his name on the signature line for "Other Persons Signing on behalf of the Patient and in their Individual Capacity (please specify authority to sign)[.]" Fred, however, did not specify his authority to sign.

On September 19, 2020, Joan fell and suffered a broken femur. The following April 2021, the Risters filed their petition seeking damages for Joan's injuries and Fred's loss of consortium.

In June 2021, NHC filed its motion to stay the proceedings and compel arbitration. NHC attached the Arbitration Agreement. NHC claimed that: (1) Fred signed as Joan's legal representative; and (2) Joan was a third-party beneficiary of the Arbitration Agreement and should be estopped from arguing that agreement was not valid.

After a hearing on the matter, the trial court entered an order denying NHC's motion to stay the proceedings and compel arbitration. The court determined that there was no evidence that Fred had the legal authority to sign the Arbitration Agreement on Joan's behalf,

and that Joan's "mere status" as a third-party beneficiary of that agreement, even if it could

be shown, was insufficient to bind her to arbitration. The court stated:

> It is undisputed that [Joan] did not sign the Arbitration Agreement that [NHC] seeks to enforce. Further, there is no evidence attached to [NHC's] Motion or otherwise in the record that establishes that [Fred] had legal authority to sign such agreement on [Joan's] behalf. While [NHC] asserts that [Joan] should be bound as a Third-Party Beneficiary of the contract, mere status as a third-party beneficiary, which the Court declines to address at this time, is insufficient in and of itself to support binding an unwilling nonsignatory to an arbitration agreement.

This appeal followed.

## Discussion and Decision

*Point 1*

NHC's first point contends the trial court misapplied the law in denying its motion

to compel arbitration because a valid arbitration agreement exists. According to NHC, the

"plain language" of the Arbitration Agreement applies to disputes arising out of Joan's stay

at the Center and "permits its execution by a patient's 'Legal Representative' within the

meaning of the Arbitration Agreement" to declare he or she: (1) "has been given authority

by the Patient" to act on the patient's behalf; (2) "is qualified to act as the Patient's surrogate

by reason of special care and concern for the Patient"; and/or (3) "has provided

documentation evidencing the right to sign." For reasons that follow, NHC failed to meet

its burden of proving the existence of a valid and enforceable contract to arbitrate. *See*

***Duncan***, 607 S.W.3d at 249.

A party cannot be compelled to arbitration unless he or she has agreed to do so.

***Finney v. Nat'l Healthcare Corp.***, 193 S.W.3d 393, 395 (Mo. App. 2006); *see, e.g.*, ***Dunn***

***Indus. Group, Inc. v. City of Sugar Creek***, 112 S.W.3d 421, 435-37 (Mo. banc 2003)

(guarantor of agreement containing arbitration clause who did not sign arbitration clause was

not bound to arbitrate); ***Scharf v. Kogan***, 285 S.W.3d 362, 369-72 (Mo. App. 2009)

(husband's signature on escrow and funding agreements containing arbitration clauses did not bind wife to arbitrate, where wife did not sign and there was no evidence husband had actual legal authority to bind wife). Legal authority to sign an agreement on a patient's behalf and thereby bind the patient to arbitration includes POA and guardianship. *Ingram v. Brook Chateau*, 586 S.W.3d 772, 774-76 (Mo. banc 2019) (patient's appointed attorney-in-fact pursuant to Durable POA had authority to bind patient in arbitration agreement); *Ramirez-Leon v. GGNSC, LLC*, 553 S.W.3d 318, 325-26 (Mo. App. 2018) (patient's court-appointed legal guardian had authority to enter into arbitration agreement on patient's behalf).

Here, there was no evidence that Fred had any legal authority to sign on Joan's behalf. Fred did not specify the purported source of his authority to sign for Joan, nor was there any evidence in the record that Fred was appointed as Joan's attorney-in-fact, guardian, or any other type of legal representative. *See Sennett v. Nat'l Healthcare Corp.*, 272 S.W.3d 237, 245 (Mo. App. 2008) (because nothing in the record showed that son had been legally appointed as patient's legal guardian or representative, son lacked authority to bind patient); *see also Scharf*, 285 S.W.3d at 369-70 (there was no evidence husband had actual legal authority to bind wife).

Further, NHC's argument – that the Arbitration Agreement allows a "Legal Representative" to simply declare he or she has legal authority to act on a patient's behalf – ignores key terms in its own agreements. From the beginning, the Preadmission Agreement contemplated a separate and specific description of what type of "Legal Representative" was signing for the patient. The form listed several boxes to check as to the "Type" of legal representative, including limited or unlimited Durable POA and guardianship. Both the Preadmission Agreement and the Arbitration Agreement similarly requested that those

6

signing on a patient's behalf specify their legal authority to do so. NHC's own agreements recognize that a separate and specific description of the type of "Legal Representative" signing for the patient is necessary to bind the patient to an arbitration agreement. *See Ingram*, 586 S.W.3d at 774-76; *Ramirez-Leon*, 553 S.W.3d at 325-26. NHC's argument to the contrary does not relieve NHC of proving that a legal representative signing on a patient's behalf had the actual legal authority to do so. *See Sennett*, 272 S.W.3d at 245-46.

Thus, absent any evidence in the record that Fred had any legal authority to sign on Joan's behalf, there was no agreement to arbitrate binding Joan. *Id.*; *see Scharf*, 285 S.W.3d at 369-70. Because NHC failed in its burden to prove a valid arbitration agreement exists, the trial court did not misapply the law in denying NHC's motion to compel arbitration. Point 1 is denied.

*Point 2*

NHC's second point contends the trial court "erred in denying [NHC's] motion to compel arbitration" because Joan "was a third-party beneficiary to the agreement" in that she "accepted a benefit under the Preadmission and Arbitration Agreement" and is "therefore estopped from denying its effect[.]" We disagree.

A willing signatory seeking to arbitrate with a *non*signatory that is unwilling must establish at least one of the following five theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; [or] (5) estoppel." *Cent. Tr. Bank v. Graves*, 495 S.W.3d 797, 802-03 (Mo. App. 2016) (citation omitted); *see Dunn*, 112 S.W.3d at 437 (by accepting benefits under a contract, a party may be estopped from questioning the existence, validity and effect of that contract). Here, NHC relies on the theory of estoppel, based on Joan's acceptance of benefits as a third-party beneficiary. *See Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). "To be bound as a third-party beneficiary,

7

the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." ***Id***.

NHC failed to establish that Joan is a third-party beneficiary of the Arbitration Agreement based on that agreement's own terms. The Arbitration Agreement's opening paragraph was very clear, stating in bold print, that signing that agreement was *not* a condition of admission, and that by not signing, the resident may still receive care:

> Execution of this Agreement by or on behalf of the patient is not a condition of admission to, or a requirement to continue receiving care at, the Center. In other words, the resident has the right not to sign this agreement and still be admitted to, or continue receiving care at, the Center.

As such, Joan received no benefit from the Arbitration Agreement, and cannot be estopped from denying its effect. We reject NHC's argument that by receiving care, Joan benefited from the Preadmission Agreement, and that agreement along with the Arbitration Agreement should be construed together "as if one instrument." NHC seeks only to enforce the Arbitration Agreement, and that agreement expressly states that Joan is entitled to care regardless of whether she agrees to arbitration or not.

Moreover, assuming *arguendo*, that Joan could be considered a third-party beneficiary of the Arbitration Agreement, "[m]ere status as a third-party beneficiary, alone, is *not* sufficient to support binding an unwilling nonsignatory to an arbitration agreement." ***Graves***, 495 S.W.3d at 803 (emphasis in original). "Even if a party is a third-party beneficiary of an agreement containing an arbitration provision, the third-party must still manifest some agreement to arbitrate or otherwise be bound[.]" ***Id***. Here, there is nothing

in the record that indicated Joan's willingness to arbitrate. *See id*. For all these reasons, the trial court did not err in denying NHC's motion to compel arbitration. Point 2 is denied.[4]

The order denying NHC's motion to stay proceedings and compel arbitration is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFILED, J. – CONCUR

JACK A. L. GOODMAN, C.J. – CONCUR

---

[4] Point 2 goes on to argue, for the first time on appeal, that Fred was Joan's "actual or apparent agent." We do not reach this argument, however, because NHC failed to preserve this allegation of error to secure review on appeal. ***Blanks v. Fluor Corp.***, 450 S.W.3d 308, 383 (Mo. App. 2014). "We generally will not convict the trial court of error on an issue that was not put before it to decide." ***Id***.; *see **Brackney v. Walker***, 629 S.W.3d 834, 842 (Mo. App. 2021).